ROBERT B. SYKES (#3180)
    bob@sykesinjurylaw.com
ALYSON E. CARTER (#9886)
    alyson@sykesinjurylaw.com
RACHEL L. SYKES (#11778)
    rachel@sykesinjurylaw.com
**ROBERT B. SYKES & ASSOCIATES, P.C.**
311 South State Street, Suite 240
Salt Lake City, Utah  84111
Telephone (801) 533-0222
Facsimile (801) 533-8081
***Attorneys for Plaintiffs***

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | | |
|---|---|---|
| TYSON POWERS, individually and as personal representative of the estate of ALLEN KEITH NELSON, deceased, | ) ) ) ) ) | **COMPLAINT AND JURY DEMAND** |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| SALT LAKE CITY, a Municipality; JOHN and/or JANE DOE POLICE OFFICERS 1-10, Salt Lake City Police Officers; JOHN and/or JANE DOE POLICE SUPERVISORS 11-20, Salt Lake City Police Department Supervisors; and TASER INTERNATIONAL, INC., | ) ) ) ) ) ) ) ) ) | Civil No. 2:12-cv-851 BCW Judge Brooke C. Wells |
| Defendants. | ) ) | |

Plaintiffs complain and allege for causes of action against Defendants as follows:

## PRELIMINARY STATEMENT

This is a civil rights action in which the Plaintiffs seek relief for the Defendants' violations of Mr. Nelson's rights guaranteed by the United States Constitution, specifically the Fourth, Eighth, and/or Fourteenth Amendments, which rights are further secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983 and § 1988, and by the laws and the Constitution of the State of Utah. Plaintiffs seek damages, both compensatory and punitive; affirmative and equitable relief; an award of attorney's fees, costs, and interest; and other and further relief as this Court deems just and equitable.  This is further an action at law to redress a deprivation under color of statute, ordinance, regulation, custom, or usage of a right, privilege, and immunity secured to Mr. Nelson and the Plaintiffs by the Fourth, Eighth, and/or Fourteenth Amendments to the Constitution of the United States, and also arises under the law and statutes of the State of Utah.

## JURISDICTION AND VENUE

**1.**     This action arises under the United States Constitution and federal law, particularly under the provisions of the Fourth, Eighth, and/or Fourteenth Amendments of the Constitution of the United States, and 42 U.S.C. §§ 1983, 1985, and 1988.

**2.**     This action seeks redress for violations of the civil rights laws of the United States, and jurisdiction is therefore invoked pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

**3.**     The claims made in this Complaint occurred and arose in the State of Utah, in this District, and in the Central Division.  Venue is therefore proper under 28 U.S.C. § 1391 and 28 U.S.C. § 1331.

**4.**     Plaintiffs are seeking damages under federal and state law pursuant to the claims for relief specified below, and in amounts specified below.

**5.**     This Court has authority to award costs and attorney fees pursuant to 42 U.S.C. § 1988.

**6.**     This Court also has jurisdiction over any State claims Plaintiffs have brought, pursuant to 28 U.S.C. § 1367.

## PARTIES

7.      Plaintiff **Tyson Powers** is a citizen of the United States of America and a resident of San Diego, California.  Mr. Powers is the son and personal representative of the Estate of Allen Nelson, deceased.

8.      At all relevant times herein, Defendant **Salt Lake City** was was the employer, operator, and/or administrator of the Salt Lake City Police Department (the "Police Department"), and was a political subdivision organized and existing under the laws of the State of Utah.  **Salt Lake City,** and its agents, are state actors and are responsible for the day-to-day running of the Police Department as well as the policy-making, training, and supervision of the employees of the Police Department.  Among other things, **Salt Lake City** was responsible to properly and sufficiently train and supervise its employees and officers.  Plaintiffs are suing **Salt Lake City** in its official capacity.  The deliberate, knowing, and reckless indifference of **Salt Lake City** and its agents allowed Mr. Nelson to die while being detained and/or arrested.

9.      At all relevant times herein, Defendants **John and/or Jane Does 1-10** were police officers with the Salt Lake City Police Department, operating in the course and scope of their employment, and under the color and guise of the laws of the State of Utah.  The specific identities of these

Defendants are presently unknown to Plaintiffs, but upon positive identification will be properly served with process, and their individual names will added to this Complaint in accordance with the applicable federal rules. These Defendants will presently be referred to as **Doe Officers or Defendant Officers,** all of whom were physically present at the June 9, 2012, incident described in this Complaint.  Plaintiffs are suing said officers in their individual and official capacities.

10.    At all relevant times herein, Defendants **John and/or Jane Does 11-20** were police officer supervisors with the Salt Lake City Police Department, operating in the course and scope of their employment, and under the color and guise of the laws of the State of Utah.  The specific identities of these Defendants are presently unknown to Plaintiffs, but upon positive identification will be properly served with process, and their individual names will be added to this Complaint in accordance with the applicable federal rules. These Defendants will presently be referred to as **Doe Supervisors or Defendant Supervisors.**    Plaintiffs are suing said supervisors in their individual and official capacities.

11.    At all relevant times, Defendant **Taser International, Inc.** (hereinafter "Defendant Taser") is a corporation that designs, manufactured,

distributes, and sells electronic control weapons ("ECWs"), including the Taser(s) at issue in this case.  Upon information and belief, **Defendant Taser** provides training and training materials for ECWs, including the Tasers at issue in this case.

12.    Plaintiffs may serve notice of their pendent state claims against the Defendant pursuant to Utah law.  Such claims may be amended into this Complaint at a later time.  Plaintiffs deny that notice is required of any such claims in this Complaint since state law notice of such claims is not required.

## FACTUAL ALLEGATIONS

13.    On or about June 9, 2012, 44-year-old Allen Nelson ("Mr. Nelson") was walking or riding his bicycle in the vicinity of 717 South Laconia Court in Salt Lake City, Utah.

14.    According to information and belief, Doe Officers detained and/or arrested Mr. Nelson and placed him in handcuffs.

15.    According to an eyewitness, Mr. Nelson was yelling at Doe Officers, "Please don't hit me again!  I didn't do it!"

16.    According to information and belief, Doe Officers and/or Doe Supervisors utilized Taser ECWs one or multiple times on Mr. Nelson,

probably in the chest area, thereby subjecting him to an unreasonably dangerous electrical current and the significant circulatory and respiratory health problems associated therewith.

17.    Upon information and belief, Doe Supervisors ordered the utilization of Taser ECWs, allowed the utilization of Taser ECWs, or personally utilized Taser ECWs one or multiple times on Mr. Nelson, and did so in a manner as to subject him to an unreasonably dangerous electrical current and the significant circulatory and respiratory health problems associated therewith.

18.    Upon information and belief, and based on circumstantial evidence, it appears that the tasing caused a cardiac arrest.  After Doe Officers had tased Mr. Nelson, the officers immediately noticed that he was not breathing.

19.    Mr. Nelson subsequently died at the scene.

20.    According to information and belief, there was a significant delay from the time Mr. Nelson stopped breathing until the time medical personnel were called and/or arrived.

21.    Medical personnel arrived and declared Mr. Nelson to be deceased.

22.    According to information and belief, Doe Officers and/or Supervisors attempted to harass and/or intimidate a witness to the tasing and demise of Mr. Nelson into changing her story about whether a Taser was used.

23.    The conduct of Doe Officers and Doe Supervisors (hereinafter collectively referred to as "The Law Enforcement Defendants"), as set forth above and herein, violated Mr. Nelson's constitutional rights as guaranteed by the Fourth, Eighth, and/or Fourteenth Amendments to the United States Constitution, and as remediable pursuant to 42 U.S.C. §1983.

24.    At all times relevant hereto, the Law Enforcement Defendants acted under the color and guise of state and local laws.

25.    The conduct of the Law Enforcement Defendants, as set forth above and herein, acting under the color and guise of state and local law, was recklessly and deliberately indifferent to the safety, bodily integrity, well-being, and very life of Mr. Nelson, and was committed in conscious disregard of the substantial and/or unjustifiable risk of causing harm to Mr. Nelson.

26.    Upon information and belief, Mr. Nelson was in the custody of the Law Enforcement Defendants, or was in the process of being placed into custody, thereby creating a special relationship between the Law Enforcement

Defendants and Mr. Nelson.  As such, the Law Enforcement Defendants were entrusted with and responsible for Mr. Nelson's protection, safety, well being, and life while he was within (or was being placed in) their custody.  The Law Enforcement Defendants were, likewise, required to, provide reasonable, appropriate, and timely medical care and treatment to Mr. Nelson.

27.    As a direct and proximate result of the Law Enforcement Defendants' conduct, as described above and herein, Mr. Nelson was caused to suffer grievous physical injuries, significant conscious pain and suffering, and an agonizing death.

28.    The proximate conduct of the Law Enforcement Defendants, as described above and herein, was undertaken in bad faith and with malice, bad motive, evil intent, and deliberate and/or reckless indifference to and callous disregard for Mr. Nelson's constitutional rights to be free from physical assault, and/or unreasonable, unnecessary, and excessive force, directly causing grievous injuries, harm, and death, under the Fourth, Eighth, and/or Fourteenth Amendments to the United States Constitution, as well as Mr. Nelson's right to appropriate and timely medical care as a result of being in (or in the process of being placed in) the custody of the Law Enforcement Defendants.

29.   Upon information and belief, all ECWs utilized on Plaintiff-decedent were designed, manufactured, tested, packaged, marketed, distributed, and sold by Defendant Taser.

30.   Defendant Taser knew of the risks of death when a suspect is tasered, especially in the area of the chest.  Defendant Taser failed to properly warn officers of such dangers.

## FIRST CAUSE OF ACTION

### UNREASONABLE, MALICIOUS, AND/OR EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT
**Against Salt Lake City and the Law Enforcement Defendants**

### ~ Cognizable Under 42 U.S.C. § 1983 ~

31.   Plaintiffs incorporate by reference all above allegations.

32.   Upon information and belief, on June 9, 2012, the Law Enforcement Defendants utilized unreasonable, malicious, and/or excessive and unreasonably dangerous force on Mr. Nelson, most probably by tasing him on the chest.  Specifically, the excessive force included at least the dischargement of multiple ECWs on Mr. Nelson, the utilization of one or more ECWs in "Drive Stun Mode" on Mr. Nelson, and/or the utilization of significant and unreasonably dangerous restraint techniques upon Mr. Nelson.

33.     Mr. Nelson had a fundamental and well-established right to be secure in his person and a right not be subjected to unreasonable force or punishment pursuant to the Fourth, Eighth, and/or Fourteenth Amendments to the United States Constitution.

34.     The force utilized by the Law Enforcement Defendants was unreasonable, malicious, excessive, unnecessary, dangerous, willful and wanton, and unconstitutional.

35.     The unreasonable, malicious, excessive, and dangerous force used by the Law Enforcement Defendants was grossly disproportionate to any need for use of force, was in violation of applicable force continuums, and was inspired by malice and/or reckless disregard for Mr. Nelson's safety, rather than simply careless or unwise zeal.

36.     The unreasonable, malicious, excessive and dangerous force used by the Law Enforcement Defendants amounted to an abuse of official power and authority.

37.     The unreasonable, malicious, excessive and dangerous force used by the Law Enforcement Defendants evidenced a deliberate indifference to the life, safety, and well-being of Mr. Nelson.

38.   The unreasonable, malicious, excessive and dangerous force used by the Law Enforcement Defendants amounted to cruel and unusual punishment for Mr. Nelson.

39.   The unreasonable, malicious, excessive and dangerous force used by the Law Enforcement Defendants came as a result of their unreasonable seizure of Mr. Nelson.

40.   The unreasonable, malicious, excessive and dangerous force used by the Law Enforcement Defendants violated the protections afforded to Mr. Nelson pursuant to the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, which prohibit unnecessary, unreasonable, and excessive force; and the imposition of cruel and unusual punishment.

41.   The Law Enforcement Defendants' use of unreasonable, malicious, excessive and dangerous force on Mr. Nelson proximately caused his death, in that it or they directly, and in natural and continuous sequence, produced, contributed substantially, or enhanced Mr. Nelson's injuries and death.

42.   The actions of the Law Enforcement Defendants constitute willful and wanton misconduct in disregard of the rights, health, well-being, and safety of Mr. Nelson, and warrant the imposition of punitive damages.

43.    The conduct described herein reflects an established policy, practice, custom, and/or decision, officially adopted or informally accepted or condoned by Salt Lake City and the Doe Supervisors, which policy, practice, and/or custom, consists of arming police officers with lethal and dangerous weapons, such as Tasers, without providing proper training or supervision regarding their safe, reasonable, and appropriate use, and without providing proper training regarding how to handle adverse outcomes following the use of lethal and/or dangerous weapons, such as Tasers.

44.    Salt Lake City and the Doe Supervisors were deliberately indifferent toward the proper training and supervision of the Doe Officers, particularly in the use and dangers of using Tasers.

45.    Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, for punitive damages, for costs and attorney fees, and such other relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION

**DEPRIVATION OF LIFE AND LIBERTY WITHOUT DUE PROCESS IN VIOLATION OF THE EIGHTH AND/OR FOURTEENTH AMENDMENTS**
**Against All Defendants**

**~ Cognizable Under 42 U.S.C. § 1983 ~**

46.    Plaintiffs incorporate by reference all above allegations.

47.     The unreasonable, malicious, excessive and dangerous force used by the Law Enforcement Defendants, which caused the death of Mr. Nelson, deprived him of his life and liberty without due process of law, in violation of the Eighth and/or Fourteenth Amendments to the U.S. Constitution.

48.     The Law Enforcement Defendants' actions manifested malicious, reckless, and callous indifference to Mr. Nelson's clearly established constitutional rights of which reasonable police officers are aware.

49.     The actions and/or inactions of Defendants were the proximate cause of the death of Mr. Nelson and the damages sustained by Plaintiffs.

## <u>THIRD CAUSE OF ACTION</u>

**FAILURE TO CREATE, ADOPT, PROMULGATE, IMPLEMENT, REVISE, UPDATE, UTILIZE, AND/OR ENFORCE APPROPRIATE PROCEDURES, POLICIES, AND/OR PROTOCOLS Against Salt Lake City and/or the Doe Supervisors**

**~ Cognizable Under 42 U.S.C. § 1983 ~**

50.     Plaintiffs incorporate by reference all above allegations.

51.     Upon information and belief, on or about June 9, 2012, the Law Enforcement Defendants used excessive and unreasonably dangerous force on Mr. Nelson, including while Mr. Nelson was handcuffed and in their

custody, or was in the process of being placed in their custody.

52.   On and prior to June 9, 2012, the Law Enforcement Defendants knew or should have known that prolonged electrical dischargement from an ECW, or the aggregate effect of multiple electrical dischargements from multiple ECWs, especially in the area of the chest, creates an unreasonably high risk of serious bodily injury or death, particularly if the recipient of the electrical dischargement is suffering from preexisting respiratory health problems or circulatory health problems.

53.   Salt Lake City and the Defendant Supervisors had a significant prior opportunity to create, adopt, promulgate, implement, revise, update, utilize, and enforce policies, procedures, and/or protocols to help protect citizens, like Mr. Nelson, from serious and foreseeable harm, including the serious risk of harm and death associated with exposure to ECW electrical deployments, ECW drive stunning, the use of pepper/chemical spray, and the use of significant physical restraint methods, particularly when the individual who is the recipient of these methods is suffering from pre-existing respiratory health problems or circulatory health problems.

54.   Salt Lake City and the Defendant Supervisors intentionally, recklessly, and/or negligently failed to create, adopt, promulgate, implement,

revise, update, utilize, and enforce policies, procedures, and/or protocols regarding the use of force, including but not limited to force continuums, use of ECWs, use of "Drive Stun Mode" with ECWs, use of pepper/chemical spray, and use of significant physical restraint methods, and the combination thereof, including when the recipient of these forcible methods is suffering from pre-existing respiratory health problems or circulatory health problems.

55.    Additionally, Salt Lake City and the Defendant Supervisors intentionally, recklessly, and/or negligently failed to create, adopt, promulgate, implement, revise, update, utilize, and enforce policies, procedures, and/or protocols regarding the timely application of first aid after the use of ECWs, the use of "Drive Stun Mode" with ECWs, the use of pepper/chemical spray, and the use of significant physical restraint methods, and the combination thereof, including when the recipient of these forcible methods is suffering from pre-existing respiratory health problems or circulatory health problems.

56.    Salt Lake City and the Defendant Supervisors' failure to create, adopt, promulgate, implement, revise, update, utilize, and enforce policies, procedures, and/or protocols, demonstrated a reckless indifference to the safety, health, well-being and life of residents of Salt Lake County, and in particular, Mr. Nelson.

57.     Salt Lake City and the Defendant Supervisors' failure to create, adopt, promulgate, implement, revise, update, utilize, and enforce policies, procedures, and/or protocols proximately caused Mr. Nelson's death in that it or they, directly and in natural and continuous sequence, produced, contributed substantially, or enhanced Mr. Nelson's injuries and death.

58.     The actions of Salt Lake City and the Defendant Supervisors constitute willful and wanton misconduct in heedless disregard of the rights, health, well-being, and safety of Mr. Nelson, and warrant the imposition of punitive damages.

59.     Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, for punitive damages, for costs and attorney fees, and for such other relief as this Court deems just and proper.

## FOURTH CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY
### Against Defendant Taser

60.     Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

61.     Defendant Taser is in the business of manufacturing, designing, testing, assembling, marketing, and selling ECWs, including the Tasers that were used on Mr. Nelson.

62. The subject Tasers were defective and/or unreasonably dangerous when they were designed, manufactured, tested, assembled, marketed, distributed, and sold by Defendant Taser for reasons including, but not limited to, the following, all of which are applicable when the Tasers are being deployed and when the Tasers are being utilized in "Drive Stun Mode":

a. The subject tasers were defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed, and sold in a manner that would kill or seriously injure the intended target, including Mr. Nelson;

b. The subject Tasers were defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed, and sold in a manner that would subject the intended target, including Mr. Nelson, to an increased and unreasonable risk of death or serious bodily injury;

c. The subject Tasers were defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed, and sold in a manner that permitted an unreasonably strong level of electrical shock to be delivered to an intended target, including Mr. Nelson;

      **d.**    The subject Tasers were defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed, and sold in a manner that permitted an unreasonable duration of electrical shock to be delivered to an intended target, including Mr. Nelson;

      **e.**    The subject Tasers were defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed, and sold in a manner that did not adequately convey, instruct, or warn users, including law enforcement personnel, of the serious health risks associated with taser deployment;

      **f.**    The subject Tasers were defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed, and sold in a manner that did not adequately convey, instruct, or warn users, including law enforcement personnel, of the serious health risks associated with a prolonged exposure and/or a significant aggregate exposure to an electrical current;

      **g.**    The subject Tasers were defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed, and sold in a manner that failed to provide adequate and

reasonable training instructions and warnings to users, including law enforcement personnel, regarding the proper and safe use of the Tasers; and

   **h.**  The subject Tasers were defective and unreasonably dangerous because they failed to meet all applicable and reasonable safety standards, including but not limited to, Defendant Taser's internal standards and other reasonable industry standards.

   **63.**  On or about June 9, 2012, the subject Taser(s), and all of their respective component parts, were substantially unchanged from their original respective conditions when initially sold and distributed by Defendant Taser.

   **64.**  For the reasons set forth above, the subject Tasers were unreasonably dangerous to members of the public generally, and to Mr. Nelson specifically.

   **65.**  The defect(s) described above directly and proximately caused Mr. Nelson's injuries and death, in that it or they directly and in natural and continuous sequence produced, contributed substantially, or enhanced Mr. Nelson's injuries and eventual death.

   **66.**  The actions of Defendant Taser as set forth above constitute willful and wanton misconduct in disregard of the rights and safety of Mr.

Nelson, and warrant the imposition of punitive damages against Defendant Taser.

67.    Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, for punitive damages, for costs and attorney fees, and for such other relief as this Court deems just and proper.

## FIFTH CAUSE OF ACTION

### NEGLIGENCE
### Against Defendant Taser

68.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

69.    Defendant Taser knew, or in the exercise of due care should have known, that the subject tasers would be used without inspection in an unreasonably dangerous condition, and would create a foreseeable and unreasonable zone of risk of harm to members of the public generally, and to Mr. Nelson specifically.

70.    Defendant Taser was under a duty to properly and adequately design, manufacture, assemble, test, inspect, label, provide adequate warnings for, package, distribute, instruct/train law enforcement personnel about, and/or sell the subject tasers in a reasonably safe condition so as not to present a danger to members of the general public, including but not limited to

Mr. Nelson, who foreseeably would come into contact with the subject tasers.

71.     Defendant Taser breached its duty by negligently designing, manufacturing, assembling, testing, inspecting, labeling, packaging, failing to warn, marketing, distributing, instructing/training law enforcement personnel about, and/or selling the subject tasers when such products were not in reasonably safe condition for foreseeable use for reasons including, but not limited to the following:

a.     Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the subject tasers in a manner that would not kill or seriously injure the intended target, including Mr. Nelson;

b.     Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the subject tasers in a manner that would not subject the intended target, including Mr. Nelson, to an increased and unreasonable risk of death or serious bodily injury;

c.     Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the subject tasers in a manner that would not permit an unreasonably strong level

of electrical shock to be delivered to an intended target, including Mr. Nelson;

        **d.**      Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the subject tasers in a manner that would not permit an unreasonable duration of electrical shock to be delivered to an intended target, including Mr. Nelson;

        **e.**      Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the subject tasers in a manner that would adequately convey, instruct, or warn users, including law enforcement personnel, of the serious health risks associated with taser deployment or multiple taser deployment;

        **f.**      Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the subject tasers in a manner that would adequately convey, instruct, or warn users, including law enforcement personnel, of the serious health risks associated with a prolonged exposure and/or a significant aggregate exposure to an electrical current;

        **g.**      Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the subject tasers in a manner that would provide adequate and reasonable training

instructions and warnings to users, including law enforcement personnel, regarding the proper and safe use of the tasers; and

**h.** Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the subject tasers in a manner that would meet all applicable and reasonable safety standards, including, but not limited to, Defendant Taser's internal standards and other reasonable industry standards.

**72.** The negligence described above directly and proximately caused Mr. Nelson's catastrophic injuries and death, in that it or they directly and in natural and continuous sequence produced, contributed substantially, or enhanced Mr. Nelson's injuries and caused his death.

**73.** The actions of Defendant Taser, as set forth above, constitute willful and wanton misconduct, in heedless disregard of the rights and safety of Mr. Nelson, and warrant the imposition of punitive damages against Defendant Taser.

**74.** Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, for punitive damages, for costs and attorney fees, and for such other relief as this Court deems just and proper.

## SIXTH CAUSE OF ACTION

### UNLAWFUL POLICY, PROCEDURE, PRACTICE AND/OR CUSTOM
### Against Defendant Supervisors

### ~ Cognizable Under 42 U.S.C. § 1983 ~

75.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

76.    According to information and belief, the events described above were heard, in detail, by a neighbor who knew Mr. Nelson.

77.    The neighbor heard a Defendant Officer exclaim, "I tased him," after which another Defendant Officer said, "You tased him?  Oh, my God, he's not breathing."

78.    After Mr. Nelson died and his body was removed from the scene, the Law Enforcement Defendants located the witness and interrogated her for approximately 90 minutes.

79.    The Law Enforcement Defendants attempted to get the witness to change her story and say that Mr. Nelson was not tased.

80.    Such attempt to intimidate a witness into changing her testimony is unlawful and in violation of established law.

81.    The witness refused to change her story and left.

82.    A single unlawful act, or order condoning such violation of the law, as that described above, by a policymaker or Defendant Supervisor is sufficient to constitute an unlawful policy, procedure, and/or custom.

83.    The above-described actions of the Defendant Supervisors constitute willful and wanton misconduct in violation of established law, and warrant the imposition of punitive damages.

84.    The above-described actions of Defendant Supervisors proximally caused damages sustained by Plaintiffs.

## JURY DEMAND

Plaintiffs request a jury trial on all issues in this case.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendant as follows:

1.    For general compensatory damages in an amount to be determined at trial;

2.    For special damages as are shown at trial;

3.    For punitive damages against Defendants as may be allowed by law;

4.    For pre-judgment interest on the damages assessed by the

verdict of the jury, as allowed by law;

      **5.**     For Plaintiff's costs and reasonable attorney fees incurred herein, pursuant to 42 U.S.C. 1988; and

      **6.**     For such other and further relief as the Court deems just and proper.

      DATED this 6th day of September, 2012.

**ROBERT B. SYKES & ASSOCIATES, P.C.**

/s/ Robert B. Sykes
ROBERT B. SYKES
ALYSON E. CARTER
RACHEL L. SYKES
*Attorneys for Plaintiffs*

Q:\CLIENT\2153 Powers\2.  P2.1  CASE\Complaint.090512.wpd